IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

MARCH SESSION, 1997

FILED

November 19, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9604-CC-00171 |
| | ) | |
| Appellant, | ) | |
| | ) | WILLIAMSON COUNTY |
| | ) | |
| V. | ) | |
| | ) | HON. CORNELIA A. CLARK, |
| DAVID C. VOLZ, | ) | JUDGE |
| | ) | |
| Appellee. | ) | (RULE 9 APPEAL BY STATE) |

FOR THE APPELLEE:

**LEE OFMAN**
317 Main Street, Suite 203
Franklin, TN  37064

FOR THE APPELLANT:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**KAREN M. YACUZZO**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN  37243

**JOSEPH D. BAUGH, JR.**
District Attorney General

**DEREK K. SMITH**
Assistant District Attorney General
Williamson County Courthouse, Ste. G-6
P.O. Box 937
Franklin, TN  37065-0937

OPINION FILED _____

REVERSED AND REMANDED

THOMAS T. WOODALL, JUDGE

# OPINION

The State appeals as of right from the trial court's order granting the Defendant's motion to suppress evidence. In this felony possession of marijuana case, the action of the trial court had the substantive effect of dismissing the indictment against Defendant. The issue on appeal is whether or not the trial court erred by granting the Defendant's motion to suppress the evidence. We agree with the State and reverse the trial court's order granting the motion to suppress and remand this case for further proceedings.

Following the evidentiary hearing in which only the primary arresting officer and the Defendant testified, the trial court took the matter under advisement and subsequently entered an order granting the motion to suppress, along with a detailed memorandum of findings of fact and conclusions of law.

In our analysis of this case, we are mindful of the standard of review in suppression cases recently set forth by our supreme court in State v. Odom, 928 S.W.2d 18 (Tenn. 1996) as follows:

> The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

Id. at 23.

A review of the evidentiary hearing and the trial court's memorandum shows the facts in this case are as follows. On July 26, 1995, Detective Allen

Hale and Officer Don Zelaya of the Franklin Police Department stopped the Defendant and his co-defendant, David Vandewater, in their vehicle located at the Majik Market parking lot off Hillsboro Road in Franklin. The officers were acting on information given to Hale by a confidential informant within 48 hours prior to the stop. The informant advised Hale that two white males, both with the first name David, would be in a certain-described vehicle at a certain period of time in the area of the Majik Market for the purpose of meeting others regarding transactions to sell marijuana. The informant offered detailed physical descriptions of the two men, including their hair color and the fact that they both had ponytails. The informant told Hale the marijuana was located in the vehicle and that he (informant) had seen the individuals with marijuana within the last 48 hours. The informant also advised Hale that the Defendant's vehicle would have a Virginia license plate.

Hale testified that at the time he received this information from the confidential informant, he believed the informant to be reliable and to have an adequate basis of knowledge concerning the Defendant. Hale had had conversations with the informant on several prior occasions wherein the informant had given Hale names of individuals dealing in drugs, and the officer had been able to independently corroborate this information. On at least one prior occasion, the informant had told Hale about certain persons possessing drugs in a particular location and this information was corroborated independently by Hale. Hale further specified that the informant had given him names of at least a dozen individuals involved in drug activity and that he had corroborated that information. Hale, who had been involved in the vice unit of the police department for a considerable period of time, also testified that the parking lot

area of this particular Majik Market was well known as an area for transactions of illegal drugs and/or for meetings to arrange transactions involving drugs.

Hale and his then-partner went to the area of the Majik Market parking lot on Hillsboro Road and parked in an unmarked vehicle at a landscaping business nearby. Almost immediately they observed the described vehicle arrive at the Majik Market, occupied by two white males matching the descriptions given by the confidential informant. The Defendant's vehicle sat in a space at the Majik Market parking lot for approximately five (5) minutes. It was then driven into a larger parking area adjacent to where it had been sitting, where it sat for approximately two (2) to four (4) minutes before being driven back to the original location. Neither the Defendant nor his co-defendant had stepped out of their vehicle the entire time that it was located in the area of the Majik Market.

Shortly thereafter, as the Defendant's vehicle approached the public road, the officers pulled their car into the lot, requiring the Defendant's car to reverse and stop. The officers' blue lights, located in the grill of the car, were turned on and both officers got out of their vehicle and identified themselves to the two men as police officers. The service weapon of at least one officer was drawn immediately. The Defendant was then advised of his Miranda rights by Detective Hale prior to any questions being asked. While stating that the Defendant had not been arrested at that point, Hale did admit that the Defendant was not free to go from the moment he was first approached.

Hale told the Defendant he believed that he was transporting marijuana. Hale then asked him if this was correct to which Defendant replied

affirmatively and stated that it was in the "trunk" area of the vehicle. The vehicle was actually a hatchback. At this point, no marijuana had been seen by either officer. A search revealed that the marijuana was located in Defendant's backpack, and a pipe of the type commonly used to smoke marijuana was found in a compartment on one of the vehicle's doors. Both Defendants subsequently gave statements to Detective Hale.

There was no mention by the confidential informant to Hale as to the amount of marijuana in the possession of the Defendant and co-defendant. Up until the time it was actually discovered after the stop and the search, the officers had no knowledge as to the amount of marijuana in possession of the Defendant.

The trial court concluded that under the circumstances of the case, Defendant was under arrest from the very moment the officers first approached his vehicle. The trial court concluded that even though the officers had reasonable suspicion to stop the Defendant's vehicle and conduct further investigation, they did not yet have probable cause to make the arrest at the time it was made. Therefore, the trial court concluded that the Defendant's motion to suppress must be granted.

The trial court placed much emphasis upon the fact that the officers had no idea as to the amount of marijuana that was supposedly located within the Defendant's vehicle. The importance of this factor was whether the possession of the marijuana would be a misdemeanor offense (less than one-half ounce), or

a felony (possession of more than one-half ounce infers intent to sell). See Tenn. Code Ann. §§ 39-17-417 - 419; State v. Holt, 691 S.W.2d 520 (Tenn. 1984).

The trial court determined that there was insufficient proof of an offense being committed in the presence of the officers to justify a warrantless arrest for a misdemeanor. Furthermore, the court concluded that since the amount of marijuana located in the vehicle could not be determined based upon information available to the officers at the time of the stop, then a warrantless arrest for a felony also was not justified.

We have reviewed the record and conclude that the more appropriate analysis of the case is to determine whether or not there was probable cause to justify a warrantless search of the Defendant's car based upon the automobile exception to the warrant requirement.

The analysis of any warrantless search must begin with the proposition that such searches are per se unreasonable under the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution. This principle against warrantless searches is subject only to a few specifically established and well-delineated exceptions. Katz v. United States, 389 U.S. 347, 357 (1967); State v. Tyler, 598 S.W.2d 798, 801 (Tenn. Crim. App. 1980). Before the fruits of a warrantless search are admissible as evidence, the state must establish by a preponderance of the evidence that the search falls into one of the narrowly drawn exceptions to the warrant requirement. State v. Shaw, 603 S.W.2d 741, 742 (Tenn. Crim. App. 1980). One such exception is the "automobile exception" which is allowed if an officer has

probable cause to believe that the vehicle contains contraband and exigent circumstances require an immediate search. Carroll v. United States, 267 U.S. 132, 155-56 (1925); State v. Leveye, 796 S.W.2d 948 (Tenn. 1990).

The question in the instant case turns on whether or not the officers had probable cause to stop the automobile and search it. In this case, the information that led to both the search and the subsequent arrest was supplied by a confidential informant. Thus, in order to prove probable cause, the State must establish (1) that the informant had a basis for his information that a person was involved in criminal conduct and (2) that the informant is credible or his information is reliable. See State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989). This two-prong test was first developed in Aguilar v. Texas, 378 U.S. 108 (1964) and Spinelli v. United States, 393 U.S. 410 (1969). When this test is applied to warrantless searches, the trial court and the appellate courts must examine the testimony of law enforcement officers concerning the information supplied by the informant. Thus, we must review the testimony of Detective Hale to determine whether the information supplied to him by the informant established probable cause. On several occasions, Tennessee courts have pointed out that probable cause is not a technical calculation, but a factual and practical consideration of everyday life upon which "reasonable and prudent [people], not legal technicians, act." State v. Melson, 638 S.W.2d 342, 351 (Tenn. 1982) (citations omitted). For the reasons discussed below, we conclude that the police officers did have probable cause to search the Defendant's automobile.

In order to satisfy the first-prong of the Aguilar-Spinelli test, the informant must describe the manner in which he gathered the information or

describe the criminal activity with great particularity to determine the basis for his information. State v. Vela, 645 S.W.2d 765 (Tenn. Crim. App. 1982). The informant in the instant case gave detailed physical descriptions of the two men, a specific description of the vehicle they would be in, including the license plate, and the time period in which the two men would be at a certain location. Detective Hale stated that he knew this location to be a common place for drug trafficking. He also testified that the informant based his information on personal observation. This information was certainly "more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." Jacumin, 778 S.W.2d at 432, quoting Spinelli, 393 U.S. at 416. Furthermore, this Court has repeatedly found that an informant's personal observation of the contraband in question is sufficient to satisfy this prong. See State v. Moon, 841 S.W.2d 336, 339 (Tenn. Crim. App. 1992). Thus, clearly sufficient facts existed from which one could determine the basis of the information.

The second-prong may be satisfied by establishing an informant's inherent credibility or by establishing the reliability of the information. Spinelli, 393 U.S. at 415-16; Aguilar, 378 U.S. at 114. This Court has found that an informant's veracity may be shown by demonstrating that he has a previous history of providing accurate information to law enforcement officers. Moon, 841 S.W.2d at 339. In this case, Detective Hale testified that the informant had supplied him with reliable information in the past by providing detailed information about individuals who were dealing drugs. Hale said he had been able to independently verify the informant's information in the past and that it had all proved to be accurate. From the testimony at the suppression hearing, the

informant's veracity was sufficiently demonstrated and Detective Hale was justified in relying on the information supplied to him in this case.

If the police have probable cause to believe that an automobile contains contraband, they may either seize the car and then obtain a search warrant or they may search it immediately. The Fourth Amendment authorizes either action. Chambers v. Maroney, 399 U.S. 42, 52 (1970). In Chambers, the Supreme Court saw "no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant." Id. The decision to search the Defendant's car was reasonable under the circumstances and violated neither the Fourth Amendment to the United States Constitution or Article I, Section 7 of the Tennessee Constitution. Because we have already found that probable cause existed to believe that the vehicle contained contraband, we simply add that the mobility of the vehicle itself supplied the requisite exigent circumstances to conduct a warrantless search. Carroll, 267 U.S. at 153; Shaw, 603 S.W.2d at 744. The exigent circumstances that may justify a warrantless search will be presumed when a vehicle is involved. Leveye, 796 S.W.2d at 952-53.

The police officers were also justified in unzipping the Defendant's backpack located in the "trunk" area of the car. The automobile exception has been held to apply in the context of a locked car trunk. United States v. Ross, 456 U.S. 798 (1982). If there was probable cause to search the entire vehicle, the officers' authority also extends to the opening of closed containers. Id. at 821. "The scope of a warrantless search of an automobile . . . is not defined by

the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found." Id. at 824. Furthermore, it appears from the record that the Defendant told the officers that he had marijuana and that it was located in the "trunk" area. Even if the Defendant did not give his consent for the search, the officers were still justified in searching the entire vehicle, including the Defendant's backpack.

Given the facts discussed above, we conclude that the police officers acted reasonably under the circumstances and that the search of Defendant's car, including his backpack located in the "trunk" area, was supported by probable cause and exigent circumstances.

In consideration of the foregoing and the record as a whole, we reverse the trial court's order granting the motion to suppress and remand this case for further proceedings.

_____
THOMAS T. WOODALL, Judge

CONCUR:

_____
JOSEPH M. TIPTON, Judge

_____
JOE G. RILEY, Judge